BILL LOCKYER Attorney General THOMAS S. LAZAR Deputy Attorney General
THE HONORABLE LLOYD W. PELLMAN, COUNTY COUNSEL, COUNTY OF LOS ANGELES, has requested an opinion on the following question:
Are emergency medical dispatch services subject to the review and approval of the local emergency medical services agency even when the services are developed, implemented, and operated in accordance with state guidelines?
 CONCLUSION
Emergency medical dispatch services are subject to the review and approval of the local emergency medical services agency even when the services are developed, implemented, and operated in accordance with state guidelines.
 ANALYSIS
In 1980, the Legislature enacted a comprehensive statutory scheme, the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act (Health Saf. Code, §§1797-1799.201; "Act"),[1] to govern the provision of emergency medical services ("EMS") to individuals prior to their admission to a hospital. (County of San Bernardino v. Cityof San Bernardino (1997) 15 Cal.4th 909, 914-916; 81 Ops.Cal.Atty.Gen. 349, 350 (1998); 80 Ops.Cal.Atty.Gen. 283 (1997).) The Act created the Emergency Medical Services Authority ("Authority") as the state agency (§ 1797.100) responsible for the coordination and integration of all state activities concerning EMS (§1797.1) and invested the Authority with the power to adopt regulations implementing the Act (§ 1797.107; see Cal. Code Regs., tit. 22, §§ 22:100000.1-22:100334). The Act also authorized each county to develop an EMS program by creating a local EMS agency (§ 1797.94) to administer the Act at the local county level (§ 1797.200).[2]
The state and local administrative partnership created under the Act was described by the Supreme Court in Valley Medical Transport, Inc. v.Apple Valley Fire Protection Dist. (1998) 17 Cal.4th 747, 754, as follows:
 "As we recently explained, `the EMS Act contain[s] 100 different provisions in 9 separate chapters and create[s] a comprehensive system governing virtually every aspect of prehospital emergency medical services. The Legislature's desire to achieve coordination and integration is evident throughout. The EMS Act accomplishes this integration through what is essentially a two-tiered system of regulation.' [Citation.] The two tiers consist of a state Authority, which `performs a number of different functions relating to the coordination of EMS throughout the state' [citation], and an EMS agency established by a county, or a joint powers agency of counties or counties and cities, which plans, implements, and evaluates emergency medical service systems on a countywide or multicounty basis, and which maintains `"[t]he medical [control] and management of an emergency medical services system."' [Citation.]. . . ."
Recently, the Authority adopted "Emergency Medical Services Dispatch Program Guidelines" ("Guidelines") intended to encourage agencies providing emergency medical dispatch ("EMD") services to use specific medical pre-arrival instructions and EMD protocols. The Guidelines address the core components of an EMD program, including (1) an EMD protocol reference system, (2) basic EMD training and curriculum standards, (3) continuous dispatch education standards, (4) continuous quality improvement standards, (5) policies and procedures, (6) medical direction and oversight, and (7) records management.
The question presented for resolution is whether EMD services are subject to the review and approval of the local EMS agency even when the services are developed, implemented, and operated by an agency provider in accordance with the Authority's Guidelines. We conclude that they are.
Preliminarily, we note that section 1797.103
requires the Authority to "develop planning and implementation guidelines for emergency medical services systems" to address personnel and training, communications, transportation, assessment of hospitals and critical care centers, system organization and management, data collection and evaluation, public information and education, and disaster response. Ordinarily, local EMS agencies must develop their EMS system plans consistent with the Authority's guidelines (§§1797.250; 1797.254) and, when they do not, the Authority possesses the power to prevent implementation of any such plan (§ 1797.105).
Here, however, the Authority has made clear that these particular Guidelines are voluntary in nature and intended only to encourage, but not require, use of medical prearrival instructions and EMD protocols by EMD provider agencies. As a result, the question presented concerning these Guidelines is not whether local EMS agencies and EMD provider agencies are required to follow them — plainly, they are not — but, rather, whether local EMS agencies retain medical control over EMD provider agencies who choose to develop, implement, and operate their EMD services in accordance with the Guidelines.
Two statutes are the focus of our analysis. Section1797.220 states:
 "The local EMS agency, using state minimum standards, shall establish policies and procedures approved by the medical director of the local EMS agency to assure medical control of the EMS system. The policies and procedures approved by the medical director may require basic life support emergency medical transportation services to meet any medical control requirements including dispatch, patient destination policies, patient care guidelines, and quality assurance requirements."
Section 1798 additionally provides:
 "(a) The medical direction and management of an emergency medical services system shall be under the medical control of the medical director of the local EMS agency. This medical control shall be maintained in accordance with standards for medical control established by the authority.
 "(b) Medical control shall be within an EMS system which complies with the minimum standards adopted by the authority, and which is established and implemented by the local EMS agency.
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "This subdivision shall remain in effect only until the authority adopts more comprehensive regulations that supersede this subdivision."
Examining the Guidelines in light of these two statutory provisions, we find that the Guidelines must be distinguished from the "standards" and "minimum standards" the Authority is required to develop pursuant to various provisions of the Act. (See, e.g., §§1797.109, subd. (a), 1797.170, subd. (a), 1797.171, subd. (a),1797.172, subd. (a), 1797.176,1797.190, 1797.191, subd. (a).) For example, the "minimum standards" referred to in section1798, subdivision (b), are defined by regulations that "broadly mandate that the local EMS agency formulate medically related policies and procedures to govern EMS providers among others. [Citations.]" (County of San Bernardino v. City of San Bernardino,supra, 15 Cal.4th at p. 927.) In contrast, the Guidelines here, which have not been promulgated by the Authority as enforceable regulations, are neither "standards" nor "minimum standards," but are more in the nature of "suggestions" that local EMS agencies may choose, or decline, to follow. (Cf. 64 Ops.Cal.Atty.Gen. 910, 917-918 (1981).)
Moreover, in discussing the definition of "medical control," as used in sections 1797.220 and 1798, the Supreme Court explained in County of San Bernardino v. City of SanBernardino, supra, 15 Cal.4th 909:
 ". . . [S]ection 1797.220 . . . elucidate[s] the range of matters considered within the realm of `medical control' in chapter 5 [of the EMS Act]. Section 1798 itself does not define `medical control.' The `definition' of medical control in section 1797.90
merely states that medical control `means the medical management of the emergency medical services system pursuant to the provisions of Chapter 5 (commencing with Section 1798).' Section 1798(a), in fact, leaves the formulation or definition of `medical control' up to the Authority's regulatory power, declaring that `this medical control shall be maintained in accordance with standards for medical control established by the authority.' Regulations promulgated by the Authority pursuant to that section do not define medical control either. It is therefore reasonable to consult section 1797.220, where the term `medical control' is also used, to discern its meaning elsewhere in the EMS Act. It is elementary that, absent indications to the contrary, `a word or phrase . . . accorded a particular meaning in one part or portion of the law, should be accorded the same meaning in other parts or portions of the law. . . .' [Citation.] The language of section 1797.220 makes clear that the Legislature conceived of `medical control' in fairly expansive terms, encompassing matters directly related to regulating the quality of emergency medical services, including policies and procedures governing dispatch and patient care." (Id. at p. 926.)
Applying this expansive definition of "medical control" in the circumstances presented, we find that the Guidelines encompass core components of an EMD program, almost all of which are directly related to regulating the quality of EMS, including policies and procedures governing dispatch and patient care. For example, the Guidelines provide that an EMD program shall include an EMD protocol reference system ("EMDPRS"), defined as "a medically approved protocol based system used by emergency medical dispatchers to interrogate callers, dispatch aid, and provide dispatch life support instructions during medical emergencies." (Guidelines, § IIIA(1), (2).) Under the Guidelines, an EMDPRS includes systematized caller interrogation questions, systematized dispatch life support instructions, and systematized coding protocols that allow the agency to match the dispatcher's evaluation of the injury or illness severity with the vehicle response mode (emergency or non-emergency) and level of care (advanced life support or basic life support). (Guidelines, § IIIA(3).)
An EMDPRS thus directly pertains to the speed and effectiveness of the response of EMD providers dispatched to the scene of an emergency. (Cf.County of San Bernardino v. City of San Bernardino, supra, 15 Cal.4th at pp. 926-927.) This is true of several other core components of an EMD program covered by the Guidelines, such as basic EMD training and curriculum guidelines (Guidelines, § IIIB), continuing dispatcher education standards (Guidelines, § IIIC), continuous quality improvement standards (Guidelines, § IIID), policies and procedures (Guidelines, § IIIE), and medical direction and oversight (Guidelines, § IIIF). As a result, all of these matters are encompassed within the term "medical control" as used in sections1797.220 and 1798, and thus are subject to the local EMS agency's medical control by way of review and approval of any EMD services provided in accordance therewith.
Finally, local EMS agencies are required to, among other things, "plan, implement, and evaluate an emergency medical services system" (§ 1797.204), implement "advanced life support systems and limited advanced life support systems" and monitor training programs (§ 1797.206), "coordinate and otherwise facilitate arrangements necessary to develop the emergency medical services system" (§ 1797.252), and "annually submit an emergency medical services plan" to the Authority (§1797.254) for its review (§1797.105). It is readily apparent that in order to plan, implement, evaluate, coordinate, and otherwise facilitate arrangements necessary to develop an EMS system, a local EMS agency must first review and approve (i.e., exercise "medical control" over) all of the core components of that system, especially those that directly relate to regulating the quality of EMS, including policies and procedures governing dispatch and patient care. In order to fulfill these statutory responsibilities, a local EMS agency must necessarily review and approve all EMD services, including those that are developed, implemented, and operated in accordance with the Authority's Guidelines.
We conclude that EMD services are subject to the review and approval of the local EMS agency even when the services are developed, implemented, and operated in accordance with the Authority's Guidelines.
[1] All references hereafter to the Health and Safety Code are by section number only.
[2] A county has a duty to provide emergency ambulance service for all county residents in need of medical care, including both permanent county residents as well as any person found in the county in need of emergency ambulance care. (City of Lomita v. Superior Court (1986)186 Cal.App.3d 479, 481; City of Lomita v. County of Los Angeles (1983)148 Cal.App.3d 671, 673.)